UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BETH E. SHEA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | 08-12148-FDS |
| v. | ) | |
| | ) | |
| R. BRADFORD PORTER, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER ON MOTION FOR**
**SUMMARY JUDGMENT AS TO DEFENDANT BRIAN CONNORS**

**SAYLOR, J.**

This is a civil rights action stemming from an allegedly unlawful stop and arrest by an officer of the Massachusetts State Police. On June 5, 2007, plaintiff Beth Shea was arrested and charged with assault with a dangerous weapon, resisting arrest, speeding, reckless operation of a motor vehicle, failure to identify herself, and failure to stop for police. Several months later, in October 2007, the criminal case against Shea was nolle prossed, and her record was expunged.

Shea has brought suit under 42 U.S.C. § 1983, alleging that her arrest and the ensuing events violated her constitutional rights under various theories. She has also brought a series of state law claims. Defendant Brian Connors, a sergeant in the State Police, has moved for summary judgment as to all claims against him. For the reasons set forth below, Sgt. Connors's motion for summary judgment will be granted.

I.      **Factual Background**

For purposes of ruling on the pending motion, the Court will provide a general summary of the events at issue, and then will focus primarily on those facts that relate to the involvement of defendant Brian Connors. Unless otherwise noted, the facts set forth below are undisputed.

A.      **Summary of Events**

On June 5, 2007, at approximately 5:00 p.m., Beth Shea was driving through the town of Milton on her way home from work. To avoid traffic, she turned onto Centre Lane. She then noticed a woman, Tracy Gorfinkle, on the side of the road, motioning her hands toward Shea. Shea brought her car to a stop about an arms-length away from Gorfinkle, at an angle facing towards her.

According to Shea, she interpreted Gorfinkle's hand motions to mean that Gorfinkle needed help.[1] After stopping her car, Shea called the Milton Police Department on her cell phone. At that point, Bradford Porter, an off-duty state police officer who lived next door to Gorfinkle, and had been with her in the yard at the beginning of the incident, approached Shea's car. Porter was wearing street clothing; there is contradictory testimony as to whether he displayed his badge and his gun. Both sides agree that Porter told Shea that he was a police officer. Shea refused multiple requests by Porter that she get out of the car. She contends that she did not believe that he was a police officer, and did not obey.

At some point, Porter walked away and into his house. Shea then drove away. Moments later, she heard a siren and saw blue lights behind her. When Shea pulled over, she realized that

---

[1] Gorfinkle has indicated that her hand motions were intended to get Shea to slow down. Shea acknowledges that, after she had already begun her conversation with the police, she realized that this was the intent of the hand motions.

Porter was driving the car. Shea, apparently still not believing that Porter was a police officer, again refused his requests to get out of the car. Porter eventually broke Shea's driver-side window with a flashlight, unlocked the door, pulled her out of the car, and arrested her.

A Milton police officer who responded to the scene transported Shea to the State Police barracks. She was charged with assault with a dangerous weapon, resisting arrest, speeding, reckless operation of a motor vehicle, failure to identify herself, and failure to stop for police. She was released on bail, set by the bail commissioner, later that night.

A criminal complaint issued shortly thereafter. For reasons that are not clear from the record, Shea was not arraigned until late July. In October, the criminal case against Shea was nolle prossed, and the court ordered that her record be expunged.

### B.     Facts Concerning Defendant Connors

At the time of the incident, Brian Connors was a sergeant with the State Police. He was Porter's direct supervisor. (DSF ¶ 47). Sgt. Connors was not on the scene at the time of the Porter's initial interactions with Shea or her later arrest. At approximately 6:00 p.m. on the evening of June 5, he was directed by a supervisor, State Police Captain James Connolly, to go to the Milton barracks to determine whether Porter needed any assistance with the arrest. (DSF ¶ 47). Once at the barracks, Sgt. Connors spoke to Porter, who gave him a summary of what had happened and the charges on which Shea had been arrested. (DSF ¶ 48).

Sgt. Connors also spoke with Shea at around the same time. According to Shea, he asked her if she understood the charges against her. (DSF ¶ 49). Shea expressed confusion about why she was being charged with assault, and Sgt. Connors explained that the charge was based on the accusation that she had aimed her car at Gorfinkle. (DSF ¶ 50). Shea did not have any further

contact with Sgt. Connors. (DSF ¶ 51).

Later that evening, again at the instruction of Capt. Connolly, Sgt. Connors traveled to Gorfinkle's residence to interview her about the event. (DSF ¶ 62). He also interviewed her husband, Brian Murphy, who had witnessed the altercation. (DSF ¶ 60). Sgt. Connors did not interview any of the other witnesses who had called 911 during the course of the incident and arrest. (PSF ¶ 91). After the interviews, Sgt. Connors prepared handwritten notes based on Gorfinkle's and Murphy's accounts. (DSF ¶ 63).[2] Those notes include a statement by Murphy that Porter went into his house following the initial interaction. (PSF ¶ 99).

On September 3, Sgt. Connors submitted two reports to Capt. Connolly summarizing his June interviews with Gorfinkle and Murphy. (DSF ¶ 68). The statement by Murphy that Porter went into his house was not included in those reports. (PSF ¶¶ 100-101).

The criminal case against Shea was ultimately nolle prossed on October 16, 2007. (DSF ¶ 69, PSF ¶ 108). In the nolle prosequi filing, the District Attorney's office stated that "a thorough investigation by local law enforcement brought to light evidence, through percipient witness statements, that would contradict the original assertions of the arresting officer." (DSF ¶ 71). On October 26, Sgt. Connors e-mailed Capt. Connolly to inform him that the case had been nolle prossed. Capt. Connolly responded "Wow! That is amazing after all of that posturing. Ok we'll look into when I get back." (PSF ¶ 109).

State police officers later opened an internal-affairs investigation based on a complaint made by Shea against Porter. (DSF ¶ 74). As part of that investigation, a detective re-

---

[2] Plaintiff contests that Sgt. Connors prepared his notes at that time. However, she has not introduced even a modicum of evidence suggesting any other timing. Merely refusing to stipulate to a fact, with no basis for disputing its veracity, does not make that fact "disputed" for purposes of summary judgment.

interviewed Gorfinkle and Murphy. (DSF ¶ 74). He showed them the report that Sgt. Connors had prepared following his interviews with them; they indicated that the report was a fair and accurate representation of the statements they made to him. (DSF ¶ 74). The internal investigation did not result in any allegations of misconduct against Sgt. Connors. (DSF ¶ 79).[3]

## II.   Standard of Review

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotations omitted). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). In evaluating a summary judgment motion, the Court indulges all reasonable inferences in favor of the non-moving party. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). The non-moving party may not simply "rest upon mere allegation or denials of his

---

[3] Plaintiff's Statement of Facts contains several additional allegations about Sgt. Connors's conduct. For example, plaintiff alleges that "Connors used interrogation techniques that were intended to bully and harrass" Shea, and that "Connors approached the investigation with one purpose, to exonerate Porter . . . ." PSF ¶¶ 110-111. These allegations do not include citations to any affidavits, depositions, or other evidence, and will therefore be disregarded.

pleading," but instead must "present affirmative evidence." *Id*. at 256-57.

### III. Analysis

The complaint asserts a claim under 42 U.S.C. § 1983, alleging that Sgt. Connors violated Shea's Fourth Amendment right to be secure against an unreasonable seizure, her Fifth and Sixth Amendment rights to counsel, her Eighth Amendment right to be free from excessive bail, and her Fourteenth Amendment right to due process of law. The complaint also asserts state-law claims of malicious prosecution, intentional infliction of emotional distress, and violations of the Massachusetts Declaration of Rights.

#### A. Plaintiff's § 1983 Claim

In her memorandum in opposition to the motion for summary judgment, plaintiff now seems to contend that her § 1983 claim against Sgt. Connors is based on a Fourth Amendment cause of action for malicious prosecution. She does not present any evidence in support of her Fifth, Sixth, Eighth, or Fourteenth amendment claims against Sgt. Connors. She also alleges two additional theories to support her § 1983 claim: supervisory liability for Porter's actions, and participation in a conspiracy to violate her civil rights.

##### 1. Malicious Prosecution

It remains an open question whether a plaintiff may assert a § 1983 claim for malicious prosecution based on an alleged Fourth Amendment violation. *Harrington v. City of Joshua*, 610 F.3d 24, 30 (1st Cir. 2010); *Nieves v. McSweeney*, 241 F.3d 46 (1st Cir. 2001). For purposes of this motion, the Court will assume, without deciding, that such a claim is possible.

To succeed on a §1983 claim for malicious prosecution, "a plaintiff must show a deprivation of liberty, *pursuant to legal process*, that is consistent with the concept of a Fourth

Amendment seizure." *Harrington*, 610 F.3d at 30 (emphasis added).  Where, as here, a person is arrested without a warrant, the arrest pre-dates any legal process, and therefore cannot be part of the Fourth Amendment seizure upon which the §1983 claim is based.  *Nieves*, 241 F.3d at 54.  Thus, plaintiff cannot "base a malicious prosecution claim on [her] warrantless arrest, because it did not constitute legal process."  *Harrington*, 610 F.3d at 32 (quoting *Meehan v. Town of Plymouth*, 167 F.3d 85, 90 (1st Cir. 1999)).

Plaintiff must therefore demonstrate that there was some deprivation of liberty that occurred after she was subject to legal process that amounted to a Fourth Amendment seizure.  Plaintiff was first subject to legal process of any kind on June 5, when the criminal complaint against her issued.  By that time, she had been released on bail.  There is no allegation of any type of restraint on her liberty after that date.  The First Circuit has rejected the notion that the facts that a plaintiff was forced to attend court dates, and undergo the stress of knowing that she faces serious criminal charges, constitute a seizure for Fourth Amendment purposes.  *See, e.g. Nieves*, 241 F.3d  at 55.

Thus, even if a § 1983 claim can be based on malicious prosecution under some circumstances, plaintiff has failed to present any evidence of a deprivation of liberty sufficient to sustain such a claim.  Nor has plaintiff set forth any evidence to support any other constitutional violation to support her § 1983 claim against Sgt. Connors.

### 2. **Alternate Theories**

Plaintiff also sets forth two alternate bases for her § 1983 claim against Sgt. Connors: supervisory liability for Porter's actions, and participation in a conspiracy to violate her civil rights.  Plaintiff has not, however, set forth sufficient evidence to support either theory.

Supervisory liability under § 1983 cannot be predicated on a theory of *respondeat superior*. *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 562 (1st Cir. 1989). Instead, it must be shown that the supervisor's own acts or omissions "amounted to a reckless or callous indifference to the constitutional rights of others." *Id.* It must also be shown that there is an "affirmative link between the behavior of a subordinate and the action or inaction of his supervisor exists such that the supervisor's conduct led inexorably to the constitutional violation." *Maldonado v. Fontanes*, 568 F.3d 263, 275 (1st Cir. 2009).

Here, plaintiff acknowledges that she cannot establish any involvement by Sgt. Connors prior to her arrest. Rather, she seems to contend that his subsequent actions give rise to supervisory liability because they constitute proof of a policy that was in effect at the time of the incident. (Pl. Opp. to MSJ at 14). But there is no *Monell* claim in this case, nor has plaintiff ever alleged that Sgt. Connors was a policy maker. Plaintiff cites to no case that has found post-event evidence as sufficient to support a claim of supervisory liability.

Furthermore, and even if post-event evidence could be sufficient, plaintiff has not produced any evidence that the actions or omissions of Sgt. Connors were "reckless or callous." Plaintiff's allegations—that "Connors claims to have investigated but did not," and that "he used his efforts and clout to help frame an innocent person"—are not supported by any evidence in the record.

Similarly, there is no evidence to support plaintiff's conspiracy claim. To prove an actionable conspiracy, a plaintiff must show both that there has been an agreement, and that the agreement resulted in an actual deprivation of a constitutional right. *Landrigan v. City of Warwick*, 628 F.2d 736, 742 (1st Cir. 1980). Here, plaintiff concedes that there is no evidence

that Sgt. Connors entered any agreement to violate her rights prior to the incident. Rather, she alleges that he participated in a conspiratorial cover-up after the events took place.

It is far from clear from plaintiff's briefing what constitutional violation is alleged to have resulted from the cover-up. She appears to suggest that the cover-up interfered with her right of access to the courts. (Pl. Opp. to MSJ at 16). In support of her claim, she cites to a number of cases for the proposition that a § 1983 claim may rest where defendants have engaged in a cover-up that results in a plaintiff being unable to prove a constitutional violation. *See, e.g. Gonsalves v. New Bedford*, 939 F. Supp. 921, 926 (D. Mass. 1996). However, that is not a claim that was pleaded in her amended complaint, and is thus not properly before this Court. Even if it were, plaintiff has not set forth facts suggesting that she has been prevented from accessing the courts, or denied evidence that was necessary to prove the constitutional violations at issue. Plaintiff thus may not recover on a claim of conspiracy against Sgt. Connors.

Accordingly, summary judgment will be entered as to the § 1983 claim in favor of Sgt. Connors.

      **B.**    **Plaintiff's State Law Claims**

Plaintiff also asserts three state law claims: malicious prosecution, intentional infliction of emotional distress, and violation of the Massachusetts Declaration of Rights.

      **1.**    **Malicious Prosecution**

In addition to plaintiff's § 1983 claim based on malicious prosecution, plaintiff has also alleged that Sgt. Connors "willfully assisted" Porter in initiating criminal proceedings against her.

To state a claim for malicious prosecution, a plaintiff must prove that: (1) the defendants

instituted a prior criminal or civil proceeding against the plaintiff; (2) the prior proceeding was instituted without probable cause; (3) the prior proceeding was instituted for an improper purpose; and (4) the prior proceeding terminated in favor of the plaintiff. *See, e.g., Billings v. Commerce Ins. Co.*, 458 Mass. 194 (2008). The second element is uncontested.

Plaintiff alleges that "each of the named defendants actively participated in the institution of the criminal action." (Pl. Opp. to MSJ at 18). It is uncontested that Sgt. Connors did not arrest Shea, and did not sign the application for a criminal complaint. Plaintiff, however, points to the fact that Porter's report includes references to an interview Sgt. Connors conducted with Gorfinkle as supporting a reasonable inference that he was "helping Porter obtain evidence to make the charges stick." Plaintiff does not introduce any evidence to explain how that inference is supported by the facts, or cite to any case law suggesting that such involvement is sufficient to support a malicious-prosecution claim.

Even if plaintiff could establish that Sgt. Connors played an active role in the process of initiating criminal charges, she has not set forth any evidence to suggest that he acted with actual malice. *See Morrissey v. Town of Agawam*, 883 F. Supp. 2d 300 (D. Mass. 2012) (granting summary judgment on malicious prosecution claim in favor of defendant officer whose charging report did not include certain exculpatory information, where plaintiff had not introduced any evidence that the omission resulted from any actual malice). Massachusetts employs the "improper purpose" analysis set forth in § 676 of the Restatement (Second) of Torts to define the element of malice in a malicious prosecution case. *Chervin v. Travelers Ins. Co.*, 448 Mass. 95, 110 (2006). To prove an improper purpose, the plaintiff must show that the defendant "acted primarily for a purpose other than that of properly carrying out his duties, or was attempting to

achieve an unlawful end or a lawful end through unlawful means, or intended to harass, vex, or annoy the plaintiff." *Williams v. City of Boston*, 771 F. Supp. 2d 190, 206 (D. Mass. 2011).

Plaintiff has not put forth any direct evidence of such an improper purpose. Nor has she put forth evidence that would give rise to a reasonable inference that Sgt. Connors had such a purpose. There is no evidence that his report contained any false information, or that he knowingly withheld evidence that would have been exculpatory. At most, plaintiff has made general allegations that Sgt. Connors's purpose was to "make the charges stick." On a motion for summary judgment, a court need not credit "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Brown v. Latin Am. Music Co., Inc.*, 498 F.3d 18, 24 (1st Cir. 2007).

Accordingly, summary judgment on the malicious prosecution claim will be entered in favor of Sgt. Connors.

### 2. Massachusetts Civil Rights Act

Plaintiff contends that Sgt. Connors violated her rights under the Massachusetts Declaration of Rights to be free from unreasonable seizure and from excessive bail. She seeks to recover for these alleged violations under the Massachusetts Civil Rights Act ("the MCRA"), Mass. Gen. L. ch. 12 § 11I. She sets forth no independent basis for these claims, instead asserting simply that "[i]n these types of cases, the MCRA is construed identically to 42 U.S.C. § 1983." That assertion is incorrect.

> To establish a claim under the MCRA, a plaintiff must prove that:
> (1) [her] exercise or enjoyment of rights secured by the Constitution or the laws of either the United States or the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference . . . was by threats, intimidation, or coercion."

11

*Cryer v. Clarke*, 763 F. Supp. 2d 237, 254 (D. Mass. 2010).

There is no evidence in this record of any threats, intimidation, or coercion by Sgt. Connors.  Accordingly, summary judgment on plaintiff's MCRA claim will be entered in Sgt. Connors's favor.

### 3. Intentional Infliction of Emotional Distress

Finally, plaintiff alleges that Sgt. Connors committed the tort of intentional infliction of emotional distress.  The basis for this claim is unclear.  In her complaint, plaintiff alleged that Sgt. Connors "willfully assisted" Porter in his intentional infliction of emotional distress.  There is no such tort as aiding another in intentional infliction of emotional distress, nor is there any evidence in the record to support that such an act occurred here.

In her memorandum, plaintiff's counsel appears to have abandoned this theory, instead asserting that "an arrest for speeding is sufficiently outrageous to constitute this tort."  (Pl. Opp. to MSJ at 18).  There is no allegation that Sgt. Connors was involved in plaintiff's arrest, even assuming the arrest could form a basis for an intentional infliction of emotional distress claim.  Furthermore, plaintiff was not arrested simply for speeding; she was also arrested for assault with a dangerous weapon, resisting arrest, reckless operation of a motor vehicle, failure to identify herself, and failure to stop for police.  Plaintiff presents neither factual nor legal support suggesting she could recover on this claim.

Accordingly, summary judgment on the intentional infliction of emotional distress claim will be entered in favor of Sgt. Connors.

**V.        Conclusion**

For the reasons set forth above, the motion of defendant Connors for summary judgment is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  March 29, 2013