UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BETH E. SHEA, <br><br> Plaintiff, <br><br> v. <br><br> R. BRADFORD PORTER Individually, and in his official capacity as an Officer of the Massachusetts State Police, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) CIVIL ACTION NO. 1:08-cv-12148-FDS <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DECLARATION OF RICHARD A. GOREN IN SUPPORT OF PLAINTIFF'S RULE 54 APPLICATION FOR TAXABLE COSTS AND HER APPLICATION UNDER 28 USC §1988 FOR AN AWARD OF ATTORNEY'S FEES AND EXPENSES .**

I, Richard A. Goren, do hereby depose and state as follows:

1. I am counsel to the plaintiff, Beth Shea, and have been so engaged since July 2013. I am a solo practitioner with over 39 years at the bar. In 1974 I received my juris doctor degree *cum laude* from Suffolk University Law School and in 1975 an LLM from Boston University Law School. I am a member in good standing of the bars of the Commonwealth of Massachusetts, the United States District Court for the District of Massachusetts and the Courts of Appeal for the First Circuit and the Second Circuit. I have been admitted *pro hac vice* to the United States District Courts for the District of Connecticut and the District of Maine. I focus my practice on complex litigation matters. I have recently represented a section 1983 plaintiff in the case of *Doe et al v. Quaboag Regional School District et al*, United States District Court CA 12:-cv-40029-TSH. In

the past ten years I estimate that I have tried about a dozen trials and evidentiary hearings.

2. In July 2013 I was first engaged by Ms. Shea. My initial fee arrangement with Ms. Shea was on an hourly rate basis; initially to assess the bases asserted by Mr. Sinsheimer in his June 2013 Omnibus motion for new trial and then as instructed by Ms. Shea to review the entire trial record and to prosecute a motion for a new trial on the two civil rights claims of excessive force and false arrest. I reviewed the entire trial record as well as selected portions of prior motion practice; and prepared and filed a 40 page memorandum. After the Court denied the motion for a new trial, I moved for reconsideration. Through the filing of the motion for reconsideration Ms. Shea paid a total of $37,800 which represented only a portion of my billed time; and, out of those funds I paid fees to contract attorneys (see paragraph 3). Following the Court's October 31, 2014 Order granting plaintiff's motion for reconsideration, I agreed to work on a contingent fee basis whereby I released the plaintiff from fees (but not disbursements totaling $515.30) owed under the July 2013 fee contract and pursuant to which following a verdict in her favor on one or both of the civil rights claims I would be paid essentially the greater of: (a) one third of the total recovery (including any award of attorney's fees) or (b) any attorney's fee award by the Court. Under this November 2014 agreement plaintiff is responsible for and has paid all out of pocket disbursements, including copies, on line research fees, etc., from and after approximately December 1, 2013 to date. The contingent fee agreement separately provided that in the event the case had settled before trial I was to be paid at the rate of $550 per hour for all work after October 31, 2014. From November 2, 2014 to date I have a total of reduced billable hours of 508.8 hours.

3. Because I am a solo practitioner I have contract relationships with other lawyers. In the summer of 2013 to assist me with the motion for new trial I engaged, and paid out of my pocket:

   a. Michael J. Cedrone, Esq., Professor of Legal Research and Writing, at Georgetown Law School. Professor Cedrone is a graduate of Harvard College *magna cum laude*, who received his law degree *magna cum laude* from Georgetown Law in 2003, then clerked for the Hon. Edward F. Harrington, United States District Court for the District of Massachusetts, followed by practicing civil litigation with the Boston firm of Peabody & Arnold. In 2013 I billed Professor Cedrone's time at $350 per hour but paid him less.

   b. In the fall of 2013 I engaged, and paid out of my pocket, Rachel Manalili Segger, Esq. to assist me with the post-trial motions. Ms. Segger is a graduate of Harvard College, *magna cum laude*, holds a master's degree from Yale University Divinity School, and who received her law degree *cum laude* from University of Connecticut School of Law in 2002. Ms. Segger is admitted to the bars of the State of Connecticut, the State of New York and the District of Columbia; Ms. Segger is also admitted to practice before the United States District Courts for the District of Connecticut, the Southern, Eastern, Western and Northern Districts of New York. In 2013 I billed Attorney Segger's time at $350 per hour but paid her less.

   c. In December 2013 and January 2014, I engaged, and paid out of my pocket, Mark M. Freeman, Esq., to do some research of approximately a handful of hours.

      Attorney Freeman is an experienced trial attorney with more than 40 years experience. I billed Attorney Freeman's time at $350 per hour but paid him less.

    d. In 2013, 2014 and to date in 2015 I have regularly engaged Ryan D. Sullivan, Esq. to assist me on my cases. Attorney Sullivan received his law degree in 2003 from Columbus School of Law at the Catholic University of America. Mr. Sullivan is admitted to the bars of the Commonwealth of Massachusetts, Commonwealth of Virginia (inactive), the State of Maryland, the State of New Hampshire, and the United States District Courts for the District of Massachusetts, the Eastern District of Virginia, and the District of Maryland, and the Courts of Appeal for the First Circuit and the Fourth Circuit. I have tried three cases with Attorney Sullivan in the past five or so years. Since approximately mid-2013 to date I have billed Attorney Sullivan's time at $350 per hour. When this case did not settle following mediation in early 2015 Attorney Sullivan agreed to try the case with me and to provide additional litigation support through his office known as Sullivan Legal, PC at his sole expense and risk. Attorney Sullivan agreed to work on a contingent fee basis with an expectation of a section 1988 award of fees upon a successful civil rights verdict.

4. For the past several years I estimate that 75% of my cases have been hourly rate, commercial cases. In 2014 more than 90% of my fee income was attributable to hourly rate commercial litigations. As a result of my undertaking of this case on a contingent fee basis in November 2014, I have declined a few hourly rate cases.

5. It is my practice to use Clio practice management software. Except for my estimated time for completing and filing the August 14th filing of the Section 1988 application for

fees and costs and the application for an award of taxable costs, I entered my time on this case on a daily contemporaneous basis on Clio. Attached as Exhibit A1 and A2 are true and accurate excerpts from my firm's case management software from inception of this case to the date of this affidavit (A1 states a rate for me of $550 per hour and A2 states a rate of $425 per hour). The entries for attorneys Cedrone, Segger and Freeman were made by me based on the time, date and work each specified in writing to me; these entries by me were not made contemporaneously with the dates specified but upon my receipt of billing from each attorney. I paid each of attorneys Cedrone, Segger and Freeman at a rate less than the $350 per hour billed; none of these payments were treated as disbursements.

6. The total billed time on this case from July 23, 2013 to and including August 14, 2015 is 751.8 hours[1]. This does not include the hours of Ryan D. Sullivan, his law clerk Charlie Sweeney or his legal assistant Tessa Gormley. All of the tasks performed and time relating to the same by Attorney Sullivan and his staff at Sullivan Legal, PC are detailed in his Declaration and the exhibit attached to the same. All of these hours are accurately stated. All of the time expended on this case was reasonable and necessary. I made efforts to avoid duplicative tasks with Ryan Sullivan and his office. I have reviewed the accuracy of the time records and made adjustments I deemed appropriate. In addition by my calculation there are over 66 hours of my time that I determined should not be billed. The exclusion of these hours does not reflect any decision that this work was unimportant or unnecessary to the success achieved by the plaintiff at trial. Rather the time was excluded as an adjustment to approximate time that might be attributable to conceivable

---

[1] After preparation of exhibits A1 and A2 I located duplicative entries for Professor Cedrone on 9/6/13 and 8/16/13 totaling 2.2 hours.

duplication and work by me that might have been done at a lower rate by paraprofessional and to reflect a reduction of non-core work, principally the voluminous communications to and from the plaintiff. By way of example I did not bill time that I expended for what my bookkeeper might have done on the fee application. And, I culled time relating to tangential issues such as questions and disputes with attorneys Sinsheimer and Gormley. While there was some overlap I did not include any time that I had entered in a separate files for disputes with Mr. Egan, and attorneys Gormley and Sinsheimer for which I billed, and was paid, my standard rate of $425/hour. At my standard rate of $425, and at $350 per hour for each of attorneys Cedrone, Segger and Freeman, the total fees for 751.8 reduced billable hours are $317,217.00.[2]. At $550 per hour for my time and at $350 per hour for each of attorneys Cedrone, Segger and Freeman, the total fees for 751.8 reduced billable hours are $408,604.50.[3] The value of my unbilled hours is in excess of $28,000.00 (at $425/hour) and $36,500.00 (at $550/hour).

7. I believe the rate of $425 per hour is substantially lower than commercial litigators of equivalent experience and ability practicing law in the City of Boston. I believe the market rate for commercial litigators of equivalent experience and ability practicing law in the City of Boston is no less than $550 per hour. I believe the rate of $350 per hour for each of attorneys Sullivan, Cedrone, Segger and Freeman to be below the market rate of lawyers of equivalent experience and ability practicing law in the City of Boston. I believe a fair rate for attorney Sullivan to be no less than $400 per hour.

---

[2] See Note 1 supra.
[3] See Note 1 supra.

8. I contend the Court would be warranted to award an enhancement on my standard hourly rate. I have billed at $425 for the past three years; and I represent to the Court that $40,000 of contracted for time was released when I agreed to work on a contingent basis. My contingent fee agreement with the plaintiff acknowledged that a fair hourly rate enhancement for the contingent nature of the engagement would be $550 per hour. I believe the Court might take properly take judicial notice that market rates for Boston litigators with more than twenty years experience is no less than $550 per hour. The plaintiff did succeed and secured a substantial jury verdict.

9. Attached as Exhibit B is a schedule of disbursements and costs that to the best of my knowledge are eligible to be taxed as costs or eligible as expenses under Section 1988 which have been paid by attorney Sinsheimer, myself and Ms. Shea totaling $45,288.46. This includes the prior award of costs entered by the Court on August 14, 2013 (Paper 331) in the amount of $24,182.72. Of the $45,288.46 total disbursements eligible to be taxed as costs or awarded under Section 1988, $12,510.49 constitutes postage, travel and investigation expense that are not allowable as taxable costs under section 1920. Therefore to the best of my knowledge and belief plaintiff is entitled to an award of costs under Section 1920 of $32,777.97.

10. Included in the $12,510.49 disbursements is a $10,000 payment to Richard Egan. In April 2014 Richard J. Egan dba the Egan Group sued Ms. Shea in Middlesex Superior Court (civil action 14-4353). I represented Ms. Shea in that case at my standard hourly rate. Mr. Egan sued for services rendered for litigation support and investigatory services he had provided to attorney George Gormley in his representation of the plaintiff; specifically Mr. Egan's verified complaint sought $39,760.28 as per an account annexed.

The account annexed consisted of two invoices: one in the amount of $5,243.53 for a Mr. Egan's May 7, 2013 invoice to Ms. Shea; and, the second in the amount of $34,516.75 for Mr. Egan's November 6, 2012 invoice to George Gormley for the period of June 3, 2009 through November 6, 2012 for investigative and litigation support to Ms. Shea in this case. On October 6, 2014, I mailed to Mr. Egan's attorney Ms. Shea's check in the amount of $10,000 in exchange for the dismissal with prejudice of Mr. Egan's claim for $39,760.28. Attached as <u>Exhibit D</u> are copies of Mr. Egan's complaint and Mr. Egan's October 22, 2014 filing of the dismissal with prejudice. See paragraph 12 *infra*.

11. Accordingly subject to further information obtained from one or more of attorneys Gormley and Sinsheimer[4], and/or Ms. Shea, plaintiff files herewith her motion for an award of taxation of costs in the amount of $32,777.97. Accordingly subject to further information obtained from one or more of attorneys Gormley and Sinsheimer, and/or Ms. Shea, plaintiff requests an award of expenses pursuant to Section 1988 in the amount of $12,510.49.

12. In February 2015 I communicated with Robert J. Harrington, Esq., counsel to attorney Gormley concerning his fees and expenses and Mr. Gormley's attorney's fee lien in this case. Attached as Exhibit C[5] are true and accurate copies of Mr. Gormley's invoices to Ms. Shea which Mr. Harrington forwarded to me on February 13, 2015. A substantial amount of work on these invoices concerns Ms. Shea's unsuccessful efforts to pursue

---

[4] I requested more than a week ago of each of attorneys Gormley and Sinsheimer affidavits as to their fees and expenses. I also requested each attorney to attest to both the fee agreement each had with Ms. Shea and the payments made by Ms. Shea. At about 11:45 am August 13, 2015 after I had substantially finalized this affidavit I received attorney Gormley's affidavit and a near final draft of attorney Sinsheimer's affidavit. At 12:45pm on August 13, 2015, I received the affidavit of attorney Sinsheimer sans Exhibits 1 through 4. At Mr. Sinsheimer's request I located and appended to his affidavit his Exhibits 1 to 4. Neither attorney's affidavit attested as I had requested to what Ms. Shea had paid in fees and disbursements. Attorney Sinsheimer had previously filed an affidavit in this case from which I have calculated the fees and expenses she paid to him. Neither attorney's affidavit attested to what each believed were taxable costs.

[5] I presume but have not verified Exhibit C is duplicative of attorney Gormley's Exhibit H1-H 16.

8

other defendants and to a lesser extent concerning Ms. Shea's State Police Internal Affairs complaint against Mr. Porter. In my opinion Mr. Gormley's work on the unsuccessful claims focused on, and were inextricably linked to, the essential same common core facts that were tried to the jury in July 2015. Mr. Gormley's examination on deposition of some fact witnesses were of substantial assistance in preparing for trial. To the best of my knowledge and belief, Mr. Gormley agreed to work for: (i) $100 per hour (which he established to be equivalent to court appointed rates for federal criminal cases as of the fall of 2008); (ii) plus disbursements; (iii) plus a 25% contingent fee to be credited with amounts paid. I believe Mr. Gormley had committed to exclude from any potential contingent fee to which he might be entitled compensation for his time and effort expended for the unsuccessful claims. This was evidenced in part by his letter dated March 23, 2012, in which Mr. Gormley wrote to Ms. Shea that he would "provide an itemization of the amounts to be excised [from his contingent fee] (or attributable to the [unsuccessful] attempt to amend) in the near future." But to the best of my knowledge and belief Mr. Gormley did not so provide any such itemization. On November 12, 2012, Mr. Gormley informed Ms. Shea in writing: "On a related matter, I recall that Dick Egan was going to bill you at the conclusion of matters for his services…. I have requested Dick [Egan] to submit a bill which I also enclose for payment. Unlike …. this statement does not constitute damages but is more in the nature of a fee for services for litigation assistance." Mr. Egan's bill according to Mr. Gormley was $34,516.75.

13. To the best of my knowledge and belief, without having a professional audit or review of the account and without having reviewed Mr. Gormley's affidavit, Ms. Shea paid Mr.

9

Gormley a total of $139,531.71.  Upon information and belief the total hours for Mr. Gormley, his associates and staff are as follows:

| | |
|---|---|
| George F. Gormley, Esq. (GFG) | 732.3 hrs |
| Stephen Super, Esq. (SS) | 92.7 hrs |
| Robert Stewart, Esq. (RS) | 966.45 hrs |
| Tiffany Oldham (TCO) | 18.1 hrs |
| Total: | 1,809.55 hours |

14. Out of her own pocket, upon information and belief but without independent verification Ms. Shea made direct payments to some expert witnesses retained by Mr. Gormley, specifically Mr. Dobson $1,500, Mr. Rosenthal $3,000, Mr. McDonald $1,500, and Mr. Dunford $10,000.  Neither the request for an award of taxable costs or Section 1988 expenses includes expert witness fees and expenses that I paid totaling $7,900.  To the best of my knowledge and belief this does not include any expert expenses paid by attorney Gormley or Ms. Shea. Upon information and belief Mr. Sinsheimer made payments to Mr. Mears, Mr. McDonald, Mr. Rosenthal, and Mr. Archer totaling $11,424.93. Based on my understanding of the law of Section 1988 none of the expert expenses paid whether by counsel or Ms. Shea are eligible for reimbursement; and, to the best of my knowledge and belief, none of such expert expenses are included in either plaintiff's application for an award of taxable costs or Section 1988 reimbursement.

15. I have also corresponded with attorney Sinsheimer about his fees and expenses. According to his August 2013 affidavit filed under seal in this case, attorney Sinsheimer's fee agreement with Ms. Shea was as follows: hourly rate fees at $345/ hour for him, $195/hour for attorneys Thomas and Harriman and $90/hour for paralegal work with hourly fees capped at $75,000; plus a contingent fee of 25% of "gross sums awarded;" plus Ms. Shea was to pay all expenses of the litigation.  According to Mr.

10

Sinsheimer's May 15, 2013 invoice, Ms. Shea has paid Mr. Sinsheimer a total of $88,250.19; of that it appears that $75,000 was for fees and $13,250.19 was for expenses. According to Mr. Sinsheimer's May 15, 2013 invoice, he incurred a total of $29,566.10 in expenses for which $16,315.91 remains unpaid. I asked attorney Sinsheimer to cull from his disbursements taxable costs and ineligible Section 1988 reimbursement for expert expenses; but he declined. Accordingly I have reviewed Mr. Sinsheimer's August 16, 2013 affidavit filed under seal; the $29,566.10 disbursements include a total of $11,424.93 paid to the following experts, Archer, Mears, Rosenthal and McDonald. To the best of my knowledge of the $29,566.10 of attorney Sinsheimer's disbursements, $11,941.57 was included in the Court's August 14, 2013 Order on Bill of Costs (Paper 331), and his May 9, 2013 payment of $4,854.52 for transcripts should be allowed by plaintiff's current application for taxable costs. Therefore $28,221.02 of the $29,566.10 is ineligible for Section 1988 reimbursement. Accordingly upon information and belief $1,345.08 should be awarded as a Section 1988 allowable expense. See Exhibit B.

16. While requested last week I do not yet know whether attorney Gormley has any disbursements and costs beyond those of the $12,241.15 allowed as part of the Court's August 14, 2013 award of costs (Paper 331) in the amount of $24,182.72. I did inform attorney Gormley of my opinion he should not include any expenses for Mr. Egan represented by the November 2012 invoice to attorney Gormley. Accordingly I ask the Court's indulgence and may file a supplemental affidavit of either or both taxable costs and expenses allowable under Section 1988.

17. The prosecution of this case was hindered by the disorganized state of the files of both attorneys Sinsheimer and Gormley as they were provided to me. To cite but one of

numerous examples in preparing for trial there was no record of the admitted trial exhibits. Upon my engagement I was not provided, and had to cobble together, a record for me to review to enable an assessment of plaintiff's optimal arguments under the skeletal motion for new trial filed by Mr. Sinsheimer upon his withdrawal. While perhaps understandable with two changes of counsel in about six months, the discovery materials were a hodgepodge; and, I was presented with no organized pleadings files (in paper or electronic). Mr. Sinsheimer's 2013 trial examination of the defendant Porter, the expert Mr. Mears and the expert Mr. Barbale were of substantial assistance in preparing for trial. While there were claims and issues pressed by prior counsel that were not presented at the July 2015 trial, in my opinion all the work done by prior counsel was expended in pursuit of the ultimate result as both the successful and unsuccessful claims arose from the same common core set of facts and/or were based on related legal theories. To prepare for trial I reviewed and analyzed essentially all or nearly all the materials discovered and produced in this lengthy litigation.

18. According to its October 11, 2013 review of the "2013 'Rate Report," Massachusetts Lawyers Weekly reported that the 2013 average hourly rate for partners in large Boston firms was $598.69 and for associates it was $388.21. According to this same report, rate increases for Boston firm litigation associates (excluding insurance defense) increased from 2010 rate of $274.99 to a 2012 rate of $354.17 an increase of 28.79%. According to the United States Department of Labor, Bureau of Labor Statistics the Consumer Price Index for all urban consumers (CPI-U) from 2013 to the end of 2014 went from 251.139 to 255.184 an increase of 4.045%.

19. Based on the foregoing I believe an attorney's fee request in the following amounts is reasonable:

   a. Law Office of Richard Goren:

      i. Richard A. Goren, Esq. (734.4 hours) $403,920;

      ii. Michael J. Cedrone, Esq. (6.3 hours) $2,205.00;

      iii. Rachel Segger, Esq. (3.7 hours) $1,295.00;

      iv. Mark Freeman, Esq. (7.4 hours) $2,590.00.

   b. Sullivan Law:

      i. Ryan D. Sullivan, Esq. (152 hours) $60,800.00;

      ii. Charles Sweeney, law clerk (27 hours) $2,025.00;

      iii. Therese Gormley, support (149 hours) $3,725.00.

Executed under the penalties of perjury this 13th day of August, 2015.

_____
Richard A. Goren, Esq. BBO #203700
Law Office of Richard Goren
1 State Street Suite 1500
Boston MA 02109
617-933-9494
rgoren@richardgorenlaw.com