# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| **BETH E. SHEA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | **08-12148-FDS** |
| | ) | |
| **R. BRADFORD PORTER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____)

## MEMORANDUM AND ORDER ON
## PLAINTIFF'S MOTIONS FOR ATTORNEYS' FEES AND COSTS

**SAYLOR, J.**

This is a civil rights action arising out of an arrest by a Massachusetts State Police

officer.  Plaintiff Beth Shea brought suit under 42 U.S.C. § 1983, alleging that state trooper R.

Bradford Porter violated her constitutional rights during her arrest.  The case was originally tried

to a jury in 2013.  The jury found for plaintiff on her claim of malicious prosecution, but found

for defendant on her claims of wrongful arrest and excessive force.  After initially denying

plaintiff's motion for judgment notwithstanding the verdict and a new trial, the Court granted a

renewed motion for a new trial, finding that the jury's verdict was against the weight of the

evidence.  The case was tried to a jury again in 2015, and the jury found in favor of defendant on

plaintiff's wrongful arrest claim, but returned a verdict for plaintiff on her malicious prosecution

and excessive force claims.  The jury awarded plaintiff compensatory damages of $300,000.

Plaintiff has now moved for attorneys' fees and expenses pursuant to 42 U.S.C. § 1988.

She has had three sets of attorneys in the course of the litigation, led by George Gormley (for the

discovery and investigation phase), Robert Sinsheimer (for the first trial), and Richard Goren (for the second trial).  She requests payment for the fees incurred by Goren ($410,010) and Ryan Sullivan, who assisted him ($58,950), plus either (1) the fees she has actually paid to Gormley ($139,531.71) and Sinsheimer ($88,250.19) or (2) a reasonable fee for their services, whichever is higher.  Thus, plaintiff in substance is requesting a minimum of $696,741.90.  When the full amount of the fees billed by Gormley ($642,470) and Sinsheimer ($201,067.50) are taken into account, the total fee request comes to $1,312,497.50.  Plaintiff also requests $32,777.97 in costs, which brings her total maximum request to $1,345,275.47.

In addition, Gormley has requested in his affidavit (but not in the motion) compensation for the fees incurred by a private investigator and an expert.  The private investigator, retired FBI agent Richard Egan, incurred $39,759 in fees, of which plaintiff has paid $10,000; Gormley's affidavit seeks payment of the difference, or $29,759.  The expert, Robert Dunford, submitted a bill for $10,000.  Those fees do not appear to be included in the $139,531.71 that Shea has already paid Gormley or the maximum fee request related to Gormley of $642,470.  When the additional $29,759 and $10,000 fees are taken into account, Gormley's maximum request grows to $682,229 and Shea's total maximum fee request grows to $1,385,034.47.

Plaintiff's motion is somewhat confusing and difficult to resolve, for multiple reasons.

First, and as noted, plaintiff changed lawyers twice in the course of the litigation.  She, of course, has a right to counsel of her choice, but defendant should not bear the expense when she elects to make a change.  At a minimum, any time expended by new counsel learning the facts of the case and reviewing the legal proceedings up to that point is redundant and not compensable.  Here, however, Sinsheimer and Goren do not appear to have made any effort to segregate their time between non-compensable tasks (such as learning the history of the case) and compensable

tasks.  Reasonable attorneys' fees for the entire matter should be based on the fees that a single attorney (or set of attorneys) would have incurred, but it is very difficult under the circumstance for the Court to make that assessment.

Furthermore, plaintiff's requests do not align with her attorneys' underlying billing records, and plaintiff does not attempt to explain the difference.  And the bills submitted by the attorneys include (among other things) block-billing entries, vague and ambiguous descriptions, and various errors and inaccuracies.  The attorneys have also billed for what appear to be entirely duplicative work of multiple attorneys on the same team.

The Court is also mindful that this matter involved a relatively simple set of facts and a relatively simple legal framework.  The core event—Officer Porter's interaction with and arrest of Beth Shea at two locations in Milton—took place in the span of approximately twenty minutes.  Shea's injuries were almost entirely psychological, and thus there was relatively little in the way of medical records.  The two trials combined consumed approximately two-and-a-half weeks of time.

Under the circumstances, the Court can make only a reasonable approximation of what a reasonable fee would have been if plaintiff had not changed lawyers and if the lawyers' billing practices had been more accurate.  For the reasons set forth below, the Court will award attorneys' fees (including the investigator) in the amount of $366,577.96 and costs in the amount of $32,777.97, for a total amount of $399,355.93.

I.      **Background**

      A.      **Factual Background**

The facts of the matter have been laid out in detail in the Court's opinion granting the motion for a new trial.  In essence, the facts are as follows.

3

On June 5, 2007, Beth Shea was driving on a residential street in Milton when a woman stepped into the street and waved her arms at her.  The woman thought Shea was driving too fast and wanted her to slow down.  Shea, however, thought the woman needed help and pulled over.  An off-duty state trooper named R. Bradford Porter, who was in his yard nearby, walked over to Shea's car, banged on the window, and ordered her to roll it down.  Porter was wearing plain clothes, but his badge was on his belt and his gun was in his hip holster.  Shea did not comply with Porter's order because she was unaware that he was a police officer.  Porter then left her alone and went into his house.  Shea drove away.

Porter followed Shea in an unmarked cruiser, and caught up with her at an intersection a short distance away.  She did not recognize him to be an officer, and refused to open her window.  Porter then shattered her window with a flashlight, dragged her out of the car, and screamed obscenities at her.  Shortly after, Milton police officers arrived, and they transported Shea from the scene.  Shea was charged with assault with a dangerous weapon, resisting arrest, speeding, reckless operation of a motor vehicle, failure to identify herself, and failure to stop for police.  Several months later, the criminal case against Shea was dropped, and her record was expunged.

**B.**     **Procedural Background**

Shea filed a complaint in this court on December 29, 2008.  The complaint asserted a claim under 42 U.S.C. § 1983, alleging that Porter violated Shea's constitutional rights to be secure against an unreasonable seizure and excessive force.  The complaint also asserted, among other things, a state-law claim of malicious prosecution.  The case was tried to a jury over seven days between April 29 and May 7, 2013.  The jury found in favor of Shea on the malicious

prosecution claim and awarded her damages of $60,000. It found for Porter on the § 1983 claims of wrongful arrest and excessive force.

After the trial, plaintiff hired new counsel, and moved for judgment in her favor as a matter of law under Rule 50 and for a new trial under Rule 59. The Court initially denied plaintiff's motion for a new trial. When Shea moved for reconsideration of that denial, the Court granted plaintiff's motion, finding that the verdict was against the weight of the evidence. The case was tried again in July 2015 over a span of seven days. Again, the jury found in favor of Porter on the wrongful arrest claim, but returned a verdict for Shea on the § 1983 excessive force claim and the state-law malicious prosecution claim. Although Shea sought $12,000,000 in damages, the jury awarded her $300,000 in compensatory damages and declined to award her punitive damages.

On August 14, 2015, Shea filed a motion for an award of attorneys' fees pursuant to § 1988. Shea also filed a motion for an award of taxable costs totaling $32,777.97.[1] Along with her motions, Shea's attorneys filed numerous affidavits and exhibits containing billing records. (Docket Nos. 435-450, 454). Based on the attorneys' hourly billing records and requested hourly rates, Shea is seeking $1,352,256.50 in attorneys' fees.

Plaintiff's request can be summarized in four groups:

1. **George F. Gormley, Esq.:** George Gormley was Shea's non-trial counsel. His work included conducting the investigation, pleading, and discovery phases of the case. Shea is requesting the greater of (1) what she has already paid Gormley (**$139,531.71**) or (2) what the Court determines she owes Gormley for his work. Gormley is requesting a total of **$642,470** in fees, which includes compensation for two contract attorneys and a paralegal. Gormley is requesting to be compensated for a total of **1,809.6** hours, which includes 732.3 hours for his personal work. He is requesting to be compensated at a rate of **$500** per hour, with hourly rates of $350, $250, and $125 for the contract attorneys and paralegal, respectively. In addition,

---

[1] On August 14, 2013, after the first trial, the Court had granted plaintiff an award of $24,182.72 in taxable costs. Since that date, plaintiff's attorneys assert that she incurred an additional $8,595.25 in costs.

Gormley is requesting compensation for hiring Richard Egan, a private investigator, and Robert Dunford, a liability expert.  Based on the $29,759 and $10,000 that Gormley owes Egan and Dunford for their work respectively, Gormley's entire request is **$682,229**.

2. **Sinsheimer and Associates**:  Robert Sinsheimer was lead trial counsel for Shea during the first trial.  Associates Lauren Thomas and Michael Harriman also worked on the trial team.  Shea is requesting the greater of (1) what she has already paid Sinsheimer (**$88,250.19**) or (2) what the Court determines she owes him for his work.  Sinsheimer is requesting a total of **$201,067.50** in fees, which includes compensation for his two associates.[2]  Sinsheimer is requesting to be compensated for a total of **701** hours, which includes 273.5 hours for his personal work and 427.5 hours for his associates' work.  He is requesting to be compensated at a rate of **$390** per hour, with hourly rates of $245 and $195 for his associates, respectively.

3. **The Law Office of Richard Goren**:  Richard Goren was lead trial counsel for Shea during the second trial.  Goren also hired three contract attorneys to work on the matter.  Goren is requesting a total of **$410,010** in fees, which includes compensation for the three contract attorneys.[3]  Goren is requesting to be compensated for a total of **751.8** hours, which includes 734.4 hours for his personal work and 17.4 hours for the contract attorneys' work.  He is requesting to be compensated at a rate of **$550** per hour, with hourly rates of $350 for the contract attorneys.

4. **Sullivan Legal, PC**:  Ryan Sullivan was co-counsel to Goren during the second trial.  Sullivan's administrative assistant and a third-year law student also worked on the case.  Sullivan is requesting a total of **$58,950** in fees, which includes compensation for his assistant and law clerk.  Sullivan is requesting to be compensated for a total of **328** hours, which includes 152 hours for his personal work and 176 hours for the work of his law clerk and administrative assistant.  He is requesting to be compensated at a rate of **$350** per hour, with hourly rates of $75 and $25 for his law clerk and assistant, respectively.

Table 1 summarizes the attorneys' requested fees:

---

[2] The $201,067.50 figure is calculated independently by the Court from Sinsheimer's hourly records and the requested rates in his affidavit.  In his affidavit, he calculates the total as $185,507.14, which appears to be incorrect.  (Docket No. 447 at 11).

[3] The $410,010 figure is calculated independently by the Court from Goren's hourly records and the requested rates in his declaration.  (Docket No. 435 at 13).  The total requested by Goren in plaintiff's motion is $408,604.50, which appears to be incorrect.  (Docket No. 434 at 1).

| Role | Lawyer | Hours | Hourly Rate ($) | Total Fee Billed ($) |
|------|--------|-------|-----------------|----------------------|
| **Table 1: Requested Legal Fees and Costs** | | | | |
| *Non-trial* | *George Gormley, Esq.* | | | |
| | George Gormley | 732.3 | 500 | 366,150.00 |
| | Contract Attorney 1 | 92.7 | 350 | 32,445.00 |
| | Contract Attorney 2 | 966.5 | 250 | 241,612.50 |
| | Paralegal | 18.1 | 125 | 2,262.50 |
| | Richard Egan - Private Investigator | 148.8 | 200 | 29,759.00 |
| | Robert Dunford - Liability Expert | 50.0 | 200 | 10,000.00 |
| | **Gormley Total** | **2,008.3** | - $ | **682,229.00** |
| *Trial 1* | *Sinsheimer and Associates* | | | |
| | Robert Sinsheimer | 273.5 | 390 | 106,665.00 |
| | Lauren Thomas - Associate | 220.8 | 245 | 54,096.00 |
| | Michael Harriman - Associate | 206.7 | 195 | 40,306.50 |
| | **Sinsheimer Total** | **701.0** | - $ | **201,067.50** |
| *Trial 2* | *The Law Office of Richard Goren* | | | |
| | Richard Goren | 734.4 | 550 | 403,920.00 |
| | Contract Attorney 1 | 6.3 | 350 | 2,205.00 |
| | Contract Attorney 2 | 3.7 | 350 | 1,295.00 |
| | Contract Attorney 3 | 7.4 | 350 | 2,590.00 |
| | **Goren Total** | **751.8** | - $ | **410,010.00** |
| *Trial 2* | *Sullivan Legal, PC* | | | |
| | Ryan Sullivan | 152.0 | 350 | 53,200.00 |
| | Law Clerk | 27.0 | 75 | 2,025.00 |
| | Administrative Assistant | 149.0 | 25 | 3,725.00 |
| | **Sullivan Total** | **328.0** | - $ | **58,950.00** |
| **Total Hours and Fees** | | **3,789.1** | | **$ 1,352,256.50** |
| Costs | | | | 32,777.97 |
| **Total Request** | | | | **$ 1,385,034.47** |

## II.    Standard of Review

In § 1983 cases, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. The district court has "broad" discretion to determine what reasonable fees and costs should be awarded under this fee-shifting provision. *United States v. Metropolitan Dist. Comm'n*, 847 F.2d 12, 14 (1st Cir. 1988). The

prevailing party has the burden of substantiating the requested fees and costs with detailed billing

records and hourly rates.  *Spooner v. EEN, Inc.*, 644 F.3d 62, 68 (1st Cir. 2011).  A district court

need not accept the hours and rates offered by the prevailing party.  Indeed, the attorneys'

records should be "scrutinized with care."  *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st

Cir. 1984).

## III.   <u>Analysis</u>

In the First Circuit, courts follow the so-called "lodestar" method for calculating

reasonable attorneys' fees.  *Tennessee Gas Pipeline Co. v. 104 Acres of Land*, 32 F.3d 632, 634

(1st Cir. 1994); *Spooner*, 644 F.3d at 67-69.  This method involves "multiplying the number of

hours productively spent by a reasonable hourly rate to calculate a base figure."  *Torres-Rivera v.

O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424,

433 (1983)).

In fashioning the lodestar, the first step is to calculate the number of hours reasonably

expended by the attorneys for the prevailing party, excluding those hours that are "excessive,

redundant, or otherwise unnecessary."  *Hensley*, 461 U.S. at 434; *see also Grendel's Den*, 749

F.2d at 950 (explaining that a court should subtract "hours which [are] duplicative, unproductive,

excessive, or otherwise unnecessary").  "The court has a right—indeed, a duty— to see whether

counsel substantially exceeded the bounds of reasonable effort."  *Metropolitan Dist. Comm'n*,

847 F.2d at 17 (internal quotation omitted); *see also Dixon v. Int'l Broth. of Police Officers*, 434

F. Supp. 2d 73, 81-82 (D. Mass. 2006) (reducing an award in part because an average of 32.8

hours drafting a summary judgment motion was excessive).  Further, a court may disallow or

discount requests where the records are "too generic and, thus, insufficient as a practical matter

to permit a court to answer questions about excessiveness, redundancy, and the like." *Torres-Rivera*, 524 F.3d at 336.

After determining the number of hours reasonably expended, a court's second step in calculating the lodestar requires a determination of a reasonable hourly rate—a determination that is benchmarked to the "prevailing rates in the community" for lawyers of like "qualifications, experience, and specialized competence." *See Gay Officers League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir. 2001).  In determining a reasonable hourly rate, a court must consider "the type of work performed, who performed it, the expertise that it required, and when it was undertaken." *Grendel's Den*, 749 F.2d at 950-51.  It is well-established that the moving party bears the burden of establishing an attorney's level of skill and experience, and when a party fails to provide documentation as to the attorney's qualifications, a court may reduce the hourly rate.  *See, e.g.*, *Martinez v. Hodgson*, 265 F. Supp. 2d 135, 142 (D. Mass. 2003).

After determining the reasonable number of hours and hourly rate, the court may adjust the lodestar upward or downward based on a number of factors.  *Spooner*, 644 F.3d at 68. Prominent among these factors is the degree of a prevailing party's success.  *See Hensley*, 461 U.S. at 440 (explaining that "the extent of a plaintiff's success is a crucial factor" to be considered in tailoring the final award); *see also De Jesus Nazario v. Rodriguez*, 554 F.3d 196, 209 (1st Cir. 2009) (noting that the court should "adjust the amount of the award to account for the results that the plaintiff obtained").  Specifically, the court should consider the lodestar in light of "the amount of damages awarded as compared to the amount sought." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992).

A plaintiff is not entitled to attorneys' fees for hours that are spent litigating unrelated unsuccessful claims or unsuccessful claims against separate defendants.  *See, e.g.*, *Burke v.*

*McDonald*, 572 F.3d 51, 63-64 (1st Cir. 2009) (affirming the plaintiff's § 1988 fee award that excluded hours worked on pursuing unsuccessful claims against separate defendants, even though "the multiple and varied claims asserted were all related in a very broad sense—they all pertained to the events that culminated in [plaintiff's] arrest"); *De Jesus Nazario v. Morris Rodriguez*, 554 F.3d 196, 207 (1st Cir. 2009) ("In determining the [lodestar] hours productively spent, a court may adjust the hours . . . subject to principles of interconnectedness, [to] disallow time spent litigating failed claims."); *see also Hensley v. Eckerhart*, 461 U.S. 424, 440-41 (1983) ("We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under [§ 1988] . . . [w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee.").

A civil rights plaintiff is entitled to change attorneys, but a defendant is not liable for fees that the plaintiff would not have incurred but for her decision to change counsel. A plaintiff is not entitled to a fee-award windfall because of the inefficiencies and duplication that inevitably follow a change in legal representation. *See Venegas v. Mitchell*, 495 U.S. 82, 87 (1990) (noting that "it is the party, rather than the lawyer" who is eligible for fees under § 1988); *Catlett v. Missouri Highway & Transp. Comm'n*, 828 F.2d 1260, 1271 (8th Cir. 1987) ("[A]lthough there is no *per se* rule that only one attorney should try a simple § 1983 claim or only one attorney should be compensated pursuant to § 1988, the proper question is whether the application is reasonable, *eliminating inefficiencies or duplications that might arise from use of more than one attorney*.") (emphasis added).

A request for attorneys' fees should not open the door to a second major wave of litigation. *Hensley*, 461 U.S. at 437. The First Circuit has indicated that district courts are not

required to engage in a minutely detailed analysis of fee requests.  *See Metropolitan Dist. Comm'n*, 847 F.2d at 16 ("Consistent with this flexible paradigm, we perceive no need for the district court to drown in a rising tide of fee-generated minutiae . . . [and] a judge [should not] become so deluged with details that he is unable to view the claims for fees in perspective.") (internal quotation omitted).  Accordingly, the Court will summarize each of the four sets of hourly records in turn and the defendant's objections.

### A.      George Gormley

Plaintiff requests that the Court award George Gormley, her original counsel, the greater of (1) the $139,531.71 that she has already paid him or (2) the amount that the Court determines she owes Gormley for his work.

### 1.      Hours Reasonably Expended

Gormley, his associated attorneys, investigator, and expert recorded 2,008.3 hours to plaintiff's case, including 732.3 hours of Gormley's own time and 1,059.2 contract attorney hours.  Defendant contends that Gormley should be compensated for only 20 percent of his recorded time because (among other things) his billing records are excessive, unreasonable, and vague.

George Gormley is an experienced and well-respected attorney who has practiced in the federal court in Boston for many years.  He engaged a lead investigator, Richard Egan, who is likewise an experienced and highly regarded former FBI special agent.  The Court has no reason to question the integrity or professional capabilities of Gormley.  Nonetheless, there are many charges in Gormley's bills, and those of his associated attorneys, that are not properly recoverable by plaintiff in this matter.

Gormley's billing records begin in September 2008 and end in November 2012, five months before the first trial.  (Docket No. 449-3 at Ex. H).  Most of those records cover the investigation, pleading, and discovery stages of the case.  Gormley (732.3 hours), contract attorney Stephen Super (92.7 hours) and contract attorney Robert Stewart (966.5 hours), plus a paralegal (18.1 hours), together billed 1,809.6 hours.  The total of 1,809.6 hours exceeds the combined hours billed by the teams of attorneys who tried the case.  Furthermore, it does not include the 195.5 hours spent by retired agent Egan, who presumably handled a substantial amount of the factual investigation.[4]

The records during the pleading and discovery stages of the case contain many examples of excessive time entries, and they are replete with block-billing, particularly by the contract attorneys.  To highlight a few examples, Super spent approximately 22 hours drafting the initial complaint, and Super and Gormley spent another 28.9 hours preparing the amended complaint.  (*Id.* at Exs. H1, H3).  Gormley and Super spent 188.9 hours to oppose three motions to dismiss by other defendants, which was not successful.[5]  (*Id.* at Ex. H3).  Gormley and Stewart billed 59.3 hours for responding to the defendant's opposition to his motion to compel.  (*Id.* at Ex. H5).  They later filed another motion to compel defendant to produce notes, a motion on which 56.4 hours were incurred.  (*Id.* at Ex. H11).

The billing records for depositions are likewise problematic.  Excluding time spent actually deposing the witness, Gormley and Stewart spent 78.1 hours preparing to depose the

---

[4] Egan has been paid $10,000 of the $39,759 that he billed Gormley.  (*See* Table 1).

[5] The original complaint, filed in December 2008, was brought against defendant Porter only, and asserted a relatively simple and straightforward claim under 42 U.S.C. § 1983 and an analogous state-law theory.  In February 2010, the complaint was amended to add four new defendants and a variety of additional counts.  All four new defendants were dismissed from the case, either by motion to dismiss (in March 2012) or summary judgment (in March 2013).  As noted above, plaintiff is not entitled to recover fees for preparing and litigating unsuccessful claims, and any such time must be eliminated from the award of fees.

defendant, and a combined 121.6 hours preparing to depose two non-parties who did not ultimately testify in either trial.  (*Id.* at Exs. H10, H12, H13, H16).  The bills also include 10.9 hours seeking publicity for the lawsuit with local newspapers, 8.0 hours attending an unrelated police civil rights case, and 25.9 hours researching the use of animated evidence at trial, even though Gormley did not work on either trial team, and no such evidence was offered or introduced.  (*Id.* at Exs. H2, H6, H15, H16).

Super's entries, in particular, use generic, vague phrases to describe tasks.  Examples include 1.5 hours for "read[ing] articles, emails, etc.," and 3.9 hours for "additional caselaw review and research."  (*Id.* at Exs. H1, H2).  Such ambiguous descriptions make it difficult for the Court to perform any meaningful assessment of the reasonableness of the hours.  *See Tennessee Gas Pipeline*, 32 F.3d at 634 (upholding district court's reduction of fees by 30 percent where attorneys charged for "such matters as 'confer with co-counsel,' 'confer with client,' 'review materials,' 'review documents,' and 'legal research,' without any indication of the subject matter involved").  To make matters worse, Super recorded his time in increments of one-quarter hour, rather than tenths of an hour, as is the common current practice.

The time entries of the contract attorneys appear to be very excessive and duplicative.  While Gormley should not be expected to perform all his own research and drafting, it nonetheless appears that there were substantial amounts of unnecessary duplicative effort.  Indeed, the sheer volume of the time incurred by Stewart is difficult to understand and is not properly explained by plaintiff.  Stewart recorded a total of 966.5 hours to the case—more than 200 hours more than any other attorney who worked on the case, including Gormley, Sinsheimer, or Goren.  Under the circumstances, and without an appropriate explanation or justification, that time will be drastically reduced.

The time incurred by the investigator, Egan, appears reasonable under the circumstances. As noted, it appears that plaintiff is only seeking to recover $29,759 of the total of $39,759 incurred, which effectively translates to a 25 percent reduction in the total hours.  The Court will not reduce the hours requested.  As to the expert, Dunford, the amount appears to be unreasonable in the absence of further supporting information.  Dunford did not testify at either trial, and it is entirely unclear what, if any, value he added to the litigation.

Under the circumstances, the Court can only approximate what would appear to be a reasonable amount of fees for the case that was actually litigated to a favorable verdict.  The hours of Gormley and his associated attorneys should be discounted significantly, but the amounts can only be somewhat rough calculations.  The Court finds that the compensable time for Attorney Gormley, his contract attorneys, and his paralegal is 523.1 hours, detailed as follows:  375 hours for George Gormley, 40 hours for Stephen Super ("Contract Attorney 1"), 90 hours for Robert Stewart ("Contract Attorney 2"), and 18.1 hours for Tiffany Oldham ("Paralegal").  Investigator Egan's 148.8 hours will remain unchanged.

## 2.      Reasonable Hourly Rate

Gormley requests to be compensated at a rate of $500 per hour, and for his two contract attorneys and paralegal to be compensated at hourly rates of $350, $250, and $125, respectively. Gormley has provided a declaration with information about his team's experience and qualifications.  (*See* Docket No. 449).

However, those rates do not appear to be entirely reasonable under the circumstances. Overall, this litigation was straightforward:  it addressed a single event that largely occurred in the space of a few hours, or even minutes, and the legal issues were not particularly complex or sophisticated.  Based on the experience and qualifications of the attorneys, the character and

complexity of the case, prevailing market rates, and rates recently awarded by local district court judges, the Court deems a reasonable hourly rate to be $375 for Gormley, $100 for the contract attorneys, and $35 for the paralegal.

There is little explanation in the record for investigator Egan's $200 hourly rate, and how it compares to the rates charged by similarly qualified investigators.  Egan's billing records indicate that he was a significant participant in the case; he conducted much of the factual investigation, and consulted with Gormley on litigation strategy.  Without a framework for comparison, it is difficult to assess the reasonableness of his hourly rate.  Under the circumstances, the Court will award an hourly rate for Egan of $150.

Based on the allowable hours and the reasonable hourly rate, the Court will grant reasonable attorneys' fees for George Gormley, his contract attorneys, his paralegal, and investigator Egan in the amount of $176,577.96.  (*See* Table 2 for detailed breakdown).

### B.      Sinsheimer and Associates

Plaintiff requests that the Court award Robert Sinsheimer and his associates, her first trial team, the greater of (1) the $88,250.19 that she has already paid or (2) an amount that the Court determines plaintiff owes Sinsheimer for his work.

#### 1.      Hours Reasonably Expended

Sinsheimer and his associates billed 701 hours to plaintiff's case, including 273.5 hours by Sinsheimer and 427.5 associate hours.  Sinsheimer's billing records cover January 2013 through May 2013, and most of the records include preparation for the first trial.  (Docket No. 447-1 at Ex. 3).  As far as the Court can ascertain, he made no effort to segregate non-compensable hours (such as time spent learning the case after he took it over from Gormley) from compensable hours.

Sinsheimer's billing records contain many vague, ambiguous, and generic entries.  For example, the records include 7.6 hours for "research exculpatory evidence" on February 20, and 5 hours for "memo" on February 21.  (*Id.*).  One of his associates recorded an entry of 1 hour for "e-mails" on May 20, 2013, two weeks after the trial.  (*Id.*).

Moreover, Sinsheimer's records include other entries for which he should not be compensated at all.  On May 1, 2013, he billed for a dinner with "Mears," a party that appears to be unrelated to plaintiff's case.  He later billed 4 hours for the preparation of his affidavit to collect fees.  (*Id.*).  The Court will not award fees for such tasks.  *See Alfonso v. Aufiero*, 66 F. Supp. 2d 183, 196 (D. Mass. 1999) (noting that time spent preparing fee petitions involves nothing more than "documenting what a lawyer did and why he or she did it").

Further, the time entries are frequently duplicative.  While courts recognize the value of collaborative work and the utility of multiple lawyers in litigation, a losing party need not bear the costs of an overstaffed case.  *See Gay Officers Action League*, 247 F.3d at 297 ("[A] court should not hesitate to discount hours if it sees signs that a prevailing party has overstaffed a case."); *see also Fryer v. A.S.A.P. Fire & Safety Corp.*, 750 F. Supp. 2d 331, 337 (D. Mass. 2010) (stating that the "time of two or three lawyers in a courtroom or conference, when one would do, may obviously be discounted") (internal quotation omitted).  For example, Sinsheimer and both associates all billed 3 hours for a meeting with Shea on January 11, 2013, and the three attorneys billed 5 hours collectively for another meeting with her on February 18, 2013.  (*Id.*).  While it is not unusual to have multiple attorneys present at key meetings, the billing records for such meetings must be scrutinized with great care.

Finally, and as previously noted, the first trial was not particularly complex.  The trial took only seven days, including time for jury empanelment, instructions, and deliberation.  And

based on Gormley's time records, much of the trial preparation was already completed by the time plaintiff hired Sinsheimer.

Accordingly, the Court finds that Sinsheimer's hours should be substantially discounted. The permissible requested time for Sinsheimer and his two associates is 370 hours, as follows: 200 hours for Robert Sinsheimer, 140 hours for Lauren Thomas, and 30 hours for Michael Harriman.

### 2. <u>Reasonable Hourly Rate</u>

Sinsheimer requests to be compensated at a rate of $390 per hour, and he requests hourly rates of $245 and $195 for his two associates. Sinsheimer has provided a declaration with information about his qualifications. (Docket No. 447). The declaration does not detail the qualifications of associates Thomas and Harriman; it merely contains a statement that Thomas was a fifth-year associate and that Harriman was a third-year associate. For the reasons stated above with regard to attorney Gormley, the Court will award attorney Sinsheimer a rate of $375 an hour. Because attorney Thomas served as second chair during the trial, a rate of $175 an hour is appropriate. A rate of $100 an hour is appropriate for attorney Harriman.

Based on the allowable hours and the reasonable hourly rate, the Court will grant reasonable attorneys' fees for Robert Sinsheimer and his associates in the amount of $102,500. (*See* Table 2 for detailed breakdown).

### C. <u>Richard Goren</u>

Richard Goren, plaintiff's lead counsel for the second trial, requests $410,010 in legal fees for 751.8 hours. At the time Goren took over the case, Gormley had already completed discovery and Sinsheimer had already tried the case once. Under the circumstances, his request for 751.8 hours is inflated to a considerable degree, and will be dramatically discounted.

1.    **Hours Reasonably Expended**

Goren recorded 751.8 hours, all of which are his personal hours except for 17.4 contract attorney hours.  Goren's billing records begin in July 2013 and end in August 2015.  (Docket No. 435 at 5).  Most of Goren's billing entries cover the drafting of the September 2013 memorandum in support of plaintiff's motion for a new trial, which the Court granted, and preparation for the July 2015 trial.  Again, there is no apparent effort to segregate compensable time from non-compensable time.

Goren's hours are unquestionably excessive.  Furthermore, they are entered in large blocks with little detail.  Therefore, it is difficult for the Court to assess the reasonableness of the time spent.  Just to pick a few examples, Goren billed 59.25 hours from September 23 to September 30, 2013, solely on plaintiff's motion for a new trial.  With only 11 time entries during that period, each entry averages more than 5 hours of billable time, and most of them are summarized vaguely as "work on brief."  (Docket No. 436 at 17-18).  Spending 59.25 hours drafting a motion for a new trial is probably excessive in its own right; and again, the issues in the case were fairly simple.  Moreover, his records for this motion are block-billed, and fail to indicate the specific tasks that took 59.25 hours.

At a later point in the case, he billed more than 29 hours, in three time entries, to work on jury instructions and motions in limine, even though the Court advised the parties that it expected the jury instructions and pre-trial rulings to be substantially similar (if not identical) to those in the first trial.  (*Id.* at 4).  Goren's records also show that he billed 22 hours to the case in a single day on July 10, 2015.  (*Id.* at 3).

Further, many of Goren's hours are duplicative with those of his co-counsel Ryan Sullivan.  It is impossible for the Court to assess entries that might not be duplicative because of

Goren's block-billing practices.  Again, just to choose two examples, Goren billed 8 hours on
June 24, 2015.  Those 8 hours were block-billed in one time entry, which includes tasks such as
"jury instructions," "travel," "inspection of courtroom," and "discussion with R. Sullivan re trial
prep."  (*Id.* at 5).  That same day, Ryan Sullivan billed just 2.4 hours for "travel to court" and
"meeting with R. Goren."  (Docket No. 442-1 at 4).  Then, on July 5, 2015, Goren block-billed 7
hours in one time entry, which includes tasks such as "travel," "conference with B. Shea," and
"trial prep discussion with R. Sullivan."  (Docket No. 436 at 4).  That same day, Sullivan billed
just 2.3 hours for a "meeting with R. Goren and B. Shea re testimony prep."  (Docket No. 442-1
at 7).  It is impossible under the circumstances for the Court to evaluate the reasonableness of the
hours and to discount for administrative tasks and travel.

Moreover, Goren's records include entries for which he should not be compensated.  He
billed 12 hours on July 20, 2013, the final day of witness examination and closing arguments.
That time is block-billed, and includes an unknown number of hours for "jury deliberation."
(Docket No. 436 at 3).  Again, he block-billed 8 hours for the next day, including time for jury
deliberation.  (*Id.*).  While time spent in court during conferences for jury instructions and jury
questions is billable, time spent waiting during jury deliberations is not.  *See, e.g.*, *Alfonso*, 66 F.
Supp. 2d at 193.  Goren's billing records also include 24.75 hours for the preparation of his fee
petition.  (Docket No. 436 at 2).  Any amount of time for that task is not properly compensable,
and it is difficult to comprehend why the petition took more than an hour or two to preserve in
any event.

Finally, the Court must consider the state of the case when plaintiff hired Goren.  Again,
this was a relatively simple trial that focused on one incident, with a limited number of
witnesses.  Excluding jury empanelment and deliberations, the trial lasted five half-days, and was

almost entirely a repeat of the first trial.  To simplify matters further, the Court had provided an

extremely detailed opinion laying out the facts well before the second trial.  Goren contends in

his affidavit that the "prosecution of the case was hindered by the disorganized state of the files

of both attorneys Sinsheimer and Gormley."  (Docket No. 435 at 11).  While that may be true,

Goren did not begin this case from scratch; rather, discovery was complete when plaintiff hired

Goren, and the pretrial issues were substantially similar to the first trial.  Furthermore, that time

is not properly compensable in any event, as it is part of the transition of counsel.  And finally,

the Court must consider that the jury awarded plaintiff $300,000 in compensatory damages and

no punitive damages, even though she sought $12,000,000.

Accordingly, the Court finds that Goren's hours should be substantially discounted.

Under the circumstances, the Court will allow Goren 175 hours.

### 2.   Reasonable Hourly Rate

Goren requests an hourly rate of $550, and an hourly rate of $350 for the contract

attorneys.  In his affidavit, Goren has provided a general summary of his qualifications.  Again,

and as with the other two lead attorneys, the Court will award an hourly rate of $375.

Based on the allowable hours and the reasonable hourly rate, the Court will grant

reasonable attorneys' fees for Richard Goren in the amount of $65,625.  (*See* Table 2 for detailed

breakdown).

### D.   Ryan Sullivan

Ryan Sullivan, co-counsel to Richard Goren during the second trial, requests $58,950 in

legal fees for 328 hours, which includes 27 hours for a third-year law student and 149 hours for

his administrative assistant.  In substance, Sullivan served as second chair during the trial.

1.      **Hours Reasonably Expended**

Sullivan used contemporaneous time records and his billing records cover the period from March 2015 to August 2015.  (Docket No. 442-1 at 2).  His personal hourly records, on the whole, are detailed and generally reasonable.  At least three sets of adjustments, however, must be made.

First, and as noted, time spent learning the case is not properly compensable.  If plaintiff had not changed counsel, there would have been no charges incurred for attorney Thomas to learn the case when attorney Sinsheimer took over, and no charges incurred for attorney Sullivan when attorney Goren took over.  Second, his entries need to be adjusted slightly for duplicative hours with Goren and time spent awaiting the jury's verdict.  (*Id.* at 11).  Third, the hours that Sullivan requests for his law clerk and administrative assistant are unreasonable.  For example, he requests $600 for the 8 hours that his law clerk spent attending trial.  (*Id.* at 10).  Moreover, he requests compensation for 146.3 hours that his legal assistant spent organizing materials from plaintiff, Gormley, and Sinsheimer.  Most of these hours are block-billed, such as 7 hours on June 29, 2015 for "continued organization of exhibits," and another 7 hours the next day for "continued file organization."  (*Id.* at 5).  The time of an administrative assistant is properly included in a lawyer's overhead, and is not separately compensable.

Accordingly, the Court finds that Sullivan's request should be discounted to a total of 125 hours.

2.      **Reasonable Hourly Rate**

Sullivan requests to be compensated at a rate of $350 per hour, and for his administrative assistant to be compensated at an hourly rate of $25.  Sullivan has provided a general summary of his experience and qualifications in his affidavit.  The Court, based on its experience, the

character and complexity of the second trial, Sullivan's second-chair role during the trial, and on

rates recently awarded by local district court judges, deems a reasonable hourly rate to be $175

for Sullivan.

Based on the allowable hours and the reasonable hourly rate, the Court will grant

reasonable attorneys' fees for Ryan Sullivan and his assistant in the amount of $21,875.  (*See*

Table 2 for detailed breakdown).

### E.    Costs

Plaintiff has submitted a bill of costs in this matter as the prevailing party under Fed. R.

Civ. P. 54(d).  Plaintiff requests that she be awarded costs in the amount of $32,777.97.  On

August 14, 2013, the Court granted plaintiff an award of taxable costs in the amount of

$24,182.72.  Plaintiff is requesting an additional award of $8,595.25 for court reporter fees,

printing fees, PACER download fees, constable fees for trial witnesses, and expenses for trial

exhibits.  (*See* Docket No. 451).

Recovery of costs is governed by 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d).  Rule

54(d) requires that costs, other than attorney's fees, be awarded to the prevailing party, unless "a

federal statute, these rules, or a court order provides otherwise."  Fed. R. Civ. P. 54(d)(1).

Section 1920 states that the "judge or clerk of any court of the United States may tax as costs"

various fees, including:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees . . . .

28 U.S.C. § 1920.  District courts are "bound by the limitations" established by § 1920, and costs not listed under that section may not be awarded.  *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444-45 (1987).  An uncontested bill of costs is customarily granted. However, a Court must independently assess whether the requested costs are reasonable. Defendant has not opposed plaintiff's costs, and the costs appear to be reasonable under § 1920.

Accordingly, and for the foregoing reasons, the Court awards total costs of $32,777.97.

| Role | Lawyer | Hours | Hourly Rate ($) | Total Fee Billed ($) |
|---|---|---|---|---|
| **Table 2: Awarded Legal Fees and Costs** | | | | |
| *Non-trial* | *George Gormley, Esq.* | | | |
| | George Gormley | 375.0 | 375 | 140,625.00 |
| | Contract Attorney 1 | 40.0 | 100 | 4,000.00 |
| | Contract Attorney 2 | 90.0 | 100 | 9,000.00 |
| | Paralegal | 18.1 | 35 | 633.50 |
| | Richard Egan - Private Investigator | 148.8 | 150 | 22,319.46 |
| | Robert Dunford - Liability Expert | - | - | - |
| | **Gormley Total** | **671.9** | **-** | **$ 176,577.96** |
| *Trial 1* | *Sinsheimer and Associates* | | | |
| | Robert Sinsheimer | 200.0 | 375 | 75,000.00 |
| | Lauren Thomas - Associate | 140.0 | 175 | 24,500.00 |
| | Michael Harriman - Associate | 30.0 | 100 | 3,000.00 |
| | **Sinsheimer Total** | **370.0** | **-** | **$ 102,500.00** |
| *Trial 2* | *The Law Office of Richard Goren* | | | |
| | Richard Goren | 175.0 | 375 | 65,625.00 |
| | Contract Attorney 1 | - | - | - |
| | Contract Attorney 2 | - | - | - |
| | Contract Attorney 3 | - | - | - |
| | **Goren Total** | **175.0** | **-** | **$ 65,625.00** |
| *Trial 2* | *Sullivan Legal, PC* | | | |
| | Ryan Sullivan | 125.0 | 175 | 21,875.00 |
| | Law Clerk | - | - | - |
| | Administrative Assistant | - | - | - |
| | **Sullivan Total** | **125.0** | **-** | **$ 21,875.00** |
| **Total Hours and Fees** | | **1,341.9** | | **$ 366,577.96** |
| Costs | | | | 32,777.97 |
| **Total Request** | | | | **$ 399,355.93** |

**IV.**     **<u>Conclusion</u>**

For the foregoing reasons, plaintiff's motion for attorneys' fees and costs is GRANTED

in the amount of $366,577.96 in fees and $32,777.97 in costs, and otherwise is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor IV

F. Dennis Saylor IV

Dated: October 16, 2015                    United States District Judge